## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| RED STICK ACQUISITIONS, LLC<br><br>                           Plaintiff,<br><br>      -v-<br><br>DOUGLAS M. DONAHUE,<br>DALE SIMONDS,<br>DAVID SIMONDS, and<br>KIMBERLY DAIGLE,<br><br>                  Defendants<br><br>and<br><br>MIDLAND FUNDING LLC,<br>CAPITAL ONE BANK (USA) NATIONAL<br>ASSOCIATION,<br>THE UNITED STATES OF AMERICA, and<br>RIVERWALK HOLDINGS, LTD<br><br>             Parties-in-Interest | CASE NO. |

## COMPLAINT FOR FORECLOSURE AND SALE
**Mortgage Recorded in Kennebec County Registry of Deeds in Book 9224, Page 220**
**Street Address: 376 Metcalf Road, Winthrop, Maine**

NOW COMES the Plaintiff Red Stick Acquisitions, LLC (the "Plaintiff"), by and through its counsel, and complains against the defendants Douglas M. Donahue ("DM Donahue"), Dale Simonds ("Dale Simonds"), David Simonds ("David Simonds") and Kimberly Daigle ("Daigle") (collectively, the "Defendants"), as well as against the Parties-in-Interest Midland Funding LLC ("Midland"), Capital One Bank (USA) National Association ("Capital One"), the United States of America (the "United States"), and

Riverwalk Holdings, Ltd. ("Riverwalk") (collectively, the Parties-in-Interest"), and says as follows:

Parties, Jurisdiction, and Venue

1.      The Plaintiff is a limited liability company organized and existing under the laws of the State of Florida and with its principal place of business located at North Palm Beach, Florida.

2.      DM Donahue is a resident of Sangerville, County of Piscataquis, and State of Maine.

3.      Dale Simonds is a resident of Randolph, County of Kennebec, and State of Maine.

4.      David Simonds is a resident of Augusta, County of Kennebec, and State of Maine.

5.      Daigle is a resident of Winthrop, County of Kennebec, and State of Maine.

6.      Midland is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in California.

7.      Capital One is a national banking association organized and existing under the laws of the United States with its main office and principal place of business located in Virginia.

8.      Riverwalk is a limited partnership organized and existing under the laws of the State of Texas with its principal place of business located in Texas.

9.      Prior to his death on April 11, 2017, Douglas E. Donahue (the "Borrower") was the record owner, subject to the Plaintiff's mortgage, and any rights of the Defendants,

of the property (the "Property") located at and about 376 Metcalf Road in Winthrop, County of Kennebec, and State of Maine.

10.     This is an action for foreclosure and sale of a mortgage (the "Mortgage") with respect to the Property, each of the Defendants and each of the Parties-in-Interest holds, or purports to hold, an interest in the Property, and, in this action, the Plaintiff seeks to foreclose against each such interest.

11.     This Court has jurisdiction over this action with respect to the United States pursuant to 28 U.S.C. § 1340 because the United States, by the Small Business/Self Employed Area #1 lien unit of the United States Department of the Treasury, Internal Revenue Service, as provided by the 26 U.S.C. §§ 6321-6323, recorded a Notice of Federal Tax Lien (the "Tax Lien Notice") in the Kennebec County Registry of Deeds (the "Registry") at Book 11173, Page 38 on September 25, 2012, which Tax Lien Notice names the Borrower, with an address of 376 Metcalf Rd., Winthrop, ME 04364-3380, as the taxpayer, and this case involves the validity and priority of that lien, in that the Plaintiff asserts that its rights in the Property under the Mortgage take priority over any rights in the Property held by the United States pursuant to the Tax Lien Notice.  A true copy of the Tax Lien Notice is attached as Exhibit A to this Complaint.

12.     This Court has supplemental jurisdiction over this action with respect to the Defendants and the Parties-in-Interest other than the United States pursuant to 28 U.S.C. § 1367(a), or pendent jurisdiction, in that the claims asserted against such other parties include the relative priority of their interests in the Property with respect to the United States, as well as each other and such claims, therefore, form part of the same case or

controversy under Article III of the United States Constitution, and/or the same nucleus of facts, as the claim against the United States.

13.     Pursuant to 28 U.S.C. § 1391(b), venue is properly laid in the District of Maine because: (a) pursuant to §§ 1391(c)(1) and (c)(2), all Defendants and Parties-in-Interest other than the United States are, for purposes of venue, residents of the State of Maine; (b) pursuant to § 1391(e)(1)(A), venue is proper in this District with respect to the United States in that all such Defendants and other Parties-in-Interest are, for purposes of venue, residents of the State of Maine; and (c) pursuant to § 1391(b)(2) and § 1391(e)(1)(B), a substantial part of the events or omissions giving rise to the claims at issue here occurred, and all of the Property is located, within the Judicial District of Maine.

<u>Note and Mortgage</u>

14.     Prior to their deaths, the Borrower and Joanne L. Donahue f/k/a Joanne L. Simonds ("Joanne") were the owners of the Property by virtue of a deed (the "Deed") dated October 21, 1998 from Joanne to herself and the Borrower, which Deed was recorded in the Registry at Book 5770, Page 236 on October 28, 2007. A true copy of the Deed is attached as Exhibit B to this Complaint.

15.     The Deed did not indicate whether the Property was to be held as a tenancy in common or a joint tenancy by Joanne and the Borrower.  Accordingly, pursuant to 33 M.R.S.A. § 159, they held the Property as tenants in common.

16.     Joanne died on February 27, 2004.  As a result of her death, her interest in the Property was inherited by both the Borrower, as her husband, and the Defendants, as her children.

- 4 -

17.     The Borrower died on April 11, 2017.  As a result of his death, his interest in the Property was inherited by his children, who are the Defendants.

18.     In July 2021, the Defendants executed and delivered a Quitclaim Deed (the "Defendants' Deed") to the Plaintiff in which they transferred to the Plaintiff all interests that they each held in the Property as Joanne's heirs, which Defendants' Deed was recorded in the Registry at Book 14106, Page 1 on July 27, 2021.  A true copy of the Defendants' Deed is attached as Exhibit C to this Complaint.

19.     On or about January 19, 2007, the Borrower executed and delivered to CitiFinancial, Inc. ("CF") a certain Disclosure Statement, Note and Security Agreement (the "Note") in the original amount financed of $142,998.16.  On or about September 24, 2017, CF endorsed an allonge (the "Allonge") to the Note transferring, without recourse, the ownership of the Note to CitiFinancial Servicing, LLC ("CF Servicing"), and, on or about that same date, CF Servicing endorsed the Allonge in blank, without recourse. A true copy of the Note, including the Allonge, is attached as Exhibit D to this Complaint.

20.     To secure, among other things, the obligations of the Borrower under the terms of the Note, and all renewals, extensions, modifications, or replacements of the Note, on or about January 19, 2007, the Borrower executed and delivered to CF a Mortgage (the "Mortgage"), which Mortgage was recorded in the Registry at Book 9224, Page 220 on January 22, 2007. A true copy of the Mortgage is attached as Exhibit E to this Complaint.

21.     The Property is more particularly described in the first page of the Mortgage (the "Mortgage Description"), which Mortgage Description is hereby incorporated into and made a part of this Complaint.

22.    The Mortgage was assigned to CF Servicing by CFNA Receivables (TX), LLC, as successor by merger to CFNA Receivables (MD), LLC, which was formerly known as CitiFinancial, Inc., as evidenced by the Assignment of Mortgage dated October 3, 2017, and recorded in the Registry at Book 12748, Page 191 on October 17, 2017. A true copy of that Assignment of Mortgage is attached as Exhibit F to this Complaint.

23.    The Mortgage was assigned to Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust A by CF Servicing as evidenced by the Assignment of Mortgage dated October 3, 2017 recorded in the Registry at Book 12748, Page 192 on October 17, 2017. A true copy of this Assignment of Mortgage is attached as Exhibit G to this Complaint.

24.    The Mortgage was assigned to Wilmington Savings Fund Society, FSB, as Trustee for GSLPF Trust Series A 2017 by Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust A as evidenced by the Assignment of Mortgage dated April 6, 2018 recorded in the Registry at Book 12991, Page 204 on August 10, 2018. A true copy of this Assignment of Mortgage is attached as Exhibit H to this Complaint.

25.    The Mortgage was assigned to Home Investment Fund V, LP by Wilmington Savings Fund Society, FSB, as Trustee for GSLPF Trust Series A 2017 as evidenced by the Assignment of Mortgage dated July 11, 2018 recorded in the Registry at Book 12991, Page 206 on August 10, 2018. A true copy of this Assignment of Mortgage is attached as Exhibit I to this Complaint.

26.    The Mortgage was assigned to AMD Trust, LLC by Home Investment Fund V, LP, as evidenced by the Assignment of Mortgage dated February 13, 2019 recorded in

the Registry at Book 13158, Page 168 on March 1, 2019. A true copy of this Assignment of Mortgage is attached as Exhibit J to this Complaint.

27.     The Mortgage was assigned to the Plaintiff by AMD Trust, LLC, as evidenced by the Assignment of Mortgage dated February 13, 2019 recorded in the Registry at Book 13158, Page 174 on March 1, 2019.  A true copy of this Assignment of Mortgage is attached as Exhibit K to this Complaint.

28.     The Plaintiff is the owner of the Mortgage.

29.     On or about January 18, 2008, CF and the Borrower executed and delivered an Adjustment of Terms Agreement (the "First Adjustment Agreement"), which, among other things, amended the terms of the Note and the Mortgage to decrease the amount of monthly payments to be made under the Note and to extend the term of the loan evidenced by the Note.  A true copy of the First Adjustment Agreement is attached as Exhibit L to this Complaint.

30.     On or about February 7, 2009, CF and the Borrower executed and delivered an Adjustment of Terms Agreement (the "Second Adjustment Agreement"), which, among other things, amended the terms of the Note and the Mortgage to further decrease the amount of monthly payments to be made under the Note and to further extend the term of the loan evidenced by the Note.  A true copy of the Second Adjustment Agreement is attached as Exhibit M to this Complaint.

31.     On or about August 13, 2009, CF and the Borrower executed and delivered an Adjustment of Terms Agreement (the "Third Adjustment Agreement"), which, among other things, further amended the terms of the Note and the Mortgage to provide for deferral

of payment of certain amounts then outstanding under the Note, to temporarily decrease the rate at which interest was accruing under the Note terms, to temporarily decrease the amount of monthly payments to be made under the Note, and to extend the term of the loan evidenced by the Note.  A true copy of the Third Adjustment Agreement is attached as Exhibit N to this Complaint.

32.    On or about January 19, 2010, CF and the Borrower executed and delivered an Adjustment of Terms Agreement (the "Fourth Adjustment Agreement"), which, among other things, further amended the terms of the Note and the Mortgage to provide for deferral of payment of certain amounts then outstanding under the Note, to temporarily change the rate at which interest was accruing under the Note, to temporarily decrease the amount of monthly payments to be made under the Note, and to extend the term of the loan evidenced by the Note.  A true copy of the Fourth Adjustment Agreement is attached as Exhibit O to this Complaint.

33.    On or about February 10, 2011, CF and the Borrower executed and delivered an Adjustment of Terms Agreement (the "Fifth Adjustment Agreement"), which, among other things, further amended the terms of the Note and the Mortgage to provide for deferral of payment of certain amounts then outstanding under the Note, to temporarily change the rate at which interest was accruing under the Note, to temporarily change the amount of monthly payments to be made under the Note, and to extend the term of the Loan evidenced by the Note.  A true copy of the Fifth Adjustment Agreement is attached as Exhibit P to this Complaint.

34.     On or about April 24, 2014, CF Servicing and the Borrower executed and delivered an Adjustment of Terms Agreement (the "Sixth Adjustment Agreement"), which, among other things, further amended the terms of the Note and the Mortgage to provide for deferral of payment of certain amounts then outstanding under the Note, to change the rate at which interest was accruing under the Note, to change the amount of monthly payments to be made under the Note, and to extend the term of the Loan evidenced by the Note.  A true copy of the Fifth Adjustment Agreement is attached as Exhibit Q to this Complaint.

35.     The Note, including the Allonge, and as amended by the First Adjustment Agreement, the Second Adjustment Agreement, the Third Adjustment Agreement, the Fourth Adjustment Agreement, the Fifth Adjustment Agreement, and the Sixth Adjustment Agreement (the Note, as so amended, and including the Allonge, the "Amended Note") has been assigned to the Plaintiff for value and the Plaintiff is the holder of, and has possession of, the Amended Note.

36.     The Plaintiff is the party entitled to collect the debt evidenced by the Amended Note, is the party entitled to enforce the Mortgage, and has the right to foreclose the Mortgage, under the circumstances set forth in this Complaint.

37.     The Plaintiff is, and certifies that it is, the owner of the Amended Note.

### Parties-in-Interest

38.     Midland holds, or may hold, an interest in the Property pursuant to a Writ of Execution (the "Midland Writ") recorded in the Registry at Book 10878, Page 54 on

November 7, 2011.  A true copy of the Midland Writ is attached as Exhibit R to this Complaint.

39.     Capital One holds, or may hold, an interest in the Property pursuant to a Writ of Execution (the "Capital One Writ") recorded in the Registry at Book 11079, Page 91 on June 26, 2012.  A true copy of the Capital One Writ is attached as Exhibit S to this Complaint.

40.     The United States holds, or may hold, an interest in the Property pursuant to the Tax Lien Notice as recorded in the Registry.

41.     Riverwalk holds, or may hold, an interest in the Property pursuant to a Writ of Execution (the "Riverwalk Writ") recorded in the Registry at Book 11395, Page 281 on May 28, 2013.  A true copy of the Riverwalk Writ is attached as Exhibit T to this Complaint.

<u>Foreclosure of Mortgage Pursuant to 14 M.R.S.A. §§ 6321-6326</u>

42.     Defaults exist under the terms of the Amended Note in that, among other things, the monthly payment due under the terms of the Amended Note on May 3, 2017, and all further payments coming due under the terms of the Amended Note on any later date, have not been paid.

43.     As a result of the defaults under the terms of the Amended Note, the condition of the Mortgage has been breached.

44.     The Property is not occupied and the provisions of 14 M.R.S.A. § 6111 do not apply to the foreclosure of the Mortgage or the acceleration of the maturity of the Amended Note.

45.     As provided in the Amended Note and the Mortgage, on or about November 16, 2018, the Plaintiff's predecessor in interest, Home Investment Fund V, LP, caused a Notice of Right to Cure to be sent to the Borrower by certified mail, return receipt requested, and by regular mail, postage prepaid.  A true copy of that Notice and evidence of the mailing of the same by certified and regular mail, postage prepaid is attached as Exhibit U to this Complaint.

46.     As of August 31, 2021, the amount owing on the loan evidenced by the Amended Note, exclusive of attorney's fees and costs not then paid by the Plaintiff, and secured by the Mortgage consisted of $141,452.60 in principal, $44,302.50 in accrued interest, $9,606.27 in fees, and escrow advances of $8,411.17, for a total of $203,772.54 owing on that date.

47.     As provided in the Amended Note, additional interest is accruing on said principal balance at the fixed rate of 7.00% per year with interest at that rate now accruing on that principal balance at $27.50 per day after August 31, 2021.

48.     Under the terms of the Amended Note and the Mortgage, repayment of all costs and expenses, including reasonable attorney's fees, incurred by the Plaintiff in enforcing the Amended Note and in bringing the current action are payable to the Plaintiff and are secured by the Mortgage.

49.     Under the terms of 14 M.R.S.A. § 6101, if the Plaintiff prevails in foreclosing upon the Mortgage in this proceeding, then it shall be entitled to have a reasonable attorney's fee incurred for that foreclosure to be included with the expense of publication, service and recording in making up the sum to be tendered by the Defendants or any person

- 11 -

claiming under the Defendants in order to be entitled to redeem the Property from the Mortgage.

**WHEREFORE**, the Plaintiff prays that this Court:

A.      Determine that there has been a breach of condition in the Mortgage;

B.      Determine the amount due on the obligations secured by the Mortgage, including, but not limited to, principal, interest, late charges, reasonable attorney's fees, and court costs;

C.      Determine the order of priority of such other parties as may appear, together with the amounts due such parties, if any;

D.      Issue a judgment of foreclosure and sale in conformity with Title 14, §6322;

E.      Grant possession of the Property to the Plaintiff upon expiration of the period of redemption; and

F.      Grant the Plaintiff such other and further relief as this Court deems just and proper.

Dated at Portland, Maine this 27th day of September, 2021.

/s/ F. Bruce Sleeper
F. Bruce Sleeper
Attorney for Plaintiff

**Jensen Baird Gardner & Henry**
Ten Free Street
PO Box 4510
Portland, Maine 04112
(207) 775-7271
bsleeper@jensenbaird.com